## Charles Richardson et al., Appts., *v.* Benjamin Richardson et al.

Under a residuary devise "to my said beloved wife (naming her) for the term of her natural life; and upon the decease of my said wife, I do order and direct that all the said residue and remainder of my estate be sold by

NOTE.—As to rights of tenants in common as to each other in general, see the following editorial notes presenting the authorities on their respective subjects: Right to injunction against each other, note to Musch v. Burkhart, 12 L. R. A. 484; purchase of adverse title by one, notes to Barnes v. Boardman, 9 L. R. A. 571, and Robinson v. Lewis, 10 L. R. A. 101; trust relation, note to Musch v. Burkhart, 12 L. R. A. 484; liability of cotenant to account for use and occupation and rents and profits, note to Gage v. Gage, 28 L. R. A. 829; liability of cotenants for improvements and repairs, note to Ward v. Ward, 29 L. R. A. 449; liability of tenant in common to action of trover, note to Waller v. Bowling, 12 L. R. A. 261.

my executor; and after paying the aforenamed bequests, it is my will, and I do order, that the moneys arising therefrom and so remaining shall be divided among my children [naming seven of his nine children] share and share alike; and, if any of my last-named children be deceased, leaving issue, then it is my will that the share the parent would have been entitled to if living shall go to such issue,"—the children take vested remainders in fee at the death of the testator, his wife surviving.

A tenant in common, acting as attorney in fact for his cotenants in the collection of rents, etc., may purchase for himself the share of a cotenant.

The other cotenants cannot claim the benefit of the purchase,—especially after notice to elect and pay, and failure to do so within a reasonable time.

(Decided October 4, 1886.)

Appeal from a decree of Common Pleas, No. 2, of Philadelphia County dismissing a bill in equity for an account, etc. Affirmed.

The bill was filed by Charles Richardson, William C. Richardson, Emma Walton, and Joseph H. White and Elizabeth B., his wife, in right of the wife, to compel defendant, Benjamin Richardson, to render a true account of all moneys, and the disbursement thereof, received by him, or made on account of certain real estate devised by William Richardson, deceased, to take charge and management of which property, as attorney in fact, defendant had been appointed by complainants, parties in interest under the will of the said William Richardson, and for the ascertainment and award of the true shares of complainants in said property.

On October 29, 1881, the complainants, the defendant's attorney consenting, by leave amended the bill by adding Elizabeth Richardson, widow of Edward Richardson, deceased, as a party defendant. On March 2, 1882, the death of Emma Walton, one of the complainants, was suggested of record, and the record amended by substituting the executor of her last will and testament, William L. Dilkes, as a party complainant in her stead.

The bill averred, in substance, that William Richardson died in 1885, seised of certain realty, and leaving a will dated December 15, 1854, and proved January 25, 1855. In the residuary clause of the will, which is the principal clause to be regarded in considering the questions raised in the case, he gave the residue of his estate "to my said beloved wife, Jane Richard-

son, for the term of her natural life; and, upon the decease of my said wife, I do order and direct that the said remainder of my estate be sold by my executor; and after paying the afore-named bequests it is my will, and I do order, that the moneys arising therefrom and so remaining shall be divided between my children: John, Elizabeth Berley, Edward, Charles, Emma, William Carman, and Jane, share and share alike; and if any of my said last-named children be deceased, leaving issue, then it is my will that the share the parent would have been entitled to if living shall go to such issue."

The bill averred that the testator left surviving him his wife, Jane Richardson, and his children: John, Elizabeth B., Edward, Charles, Emma, William C., Jane, and Benjamin, the defendant. Jane, the widow, died August 8, 1878; Jane, the daughter, married Augustus W. Boener, and died March 6, 1874, intestate and without issue; Augustus W. Boener still survives; Edward Richardson, a son, died June 2, 1877, intestate, leaving surviving him his widow, Elizabeth Richardson, the defendant, and one child, William, who died during minority, unmarried and without issue, on March 3, 1878. John Richardson, a son, died December 8, 1878, leaving a will, by which he gave his share of the proceeds of the real estate bequeathed to him by his father's will to William C. Richardson and Emma Walton, two of the plaintiffs, and Benjamin Richardson, the defendant, in equal parts. Elizabeth B. Richardson, a daughter, is now intermarried with Joseph H. White; Emma Richardson, a daughter, married Lloyd H. Walton, since deceased.

The bill further avers that the plaintiffs and the said John Richardson, on August 26, 1878, on the death of the widow Jane, appointed Benjamin Richardson their attorney in fact, to take charge of the real estate directed by William Richardson's will to be sold, to collect the rents, and to account to them for their proper proportions thereof, since which time he has acted as their attorney; but, as is averred, he has not properly accounted to the plaintiffs for their due proportions of the same, pretending that he is the owner of the share bequeathed to Jane Boener, and that Elizabeth Richardson, the widow of Edward, is entitled to a share of the said rents.

The bill charged that the defendant is not so entitled as he pretends, and that the accounts rendered by him are not true and correct. Wherefore, they pray relief that the defendant render a true account of the moneys received and disbursed by him in respect to the said real estate, and that the plaintiffs' shares in the net balance be ascertained, and that the defendant be directed to pay their respective shares of the same to them, etc.

The answer of the defendant, Benjamin Richardson, averred that the facts set forth in the bill were true, except that the last will and testament of John Richardson, deceased, admitted to probate on December 12, 1878, was in the words following, namely: "I, John Richardson, do make this my last will and testament. I give and bequeath, and devise, all my property and estate to Benjamin Richardson, Emma Walton, and William C. Richardson, absolutely, in fee simple, in equal shares, with the following proviso and condition: Should the said Emma Walton be deceased at the time of the partition of the estate, or any part thereof, then it is my will that the share of the said Emma shall go to the above-mentioned Benjamin Richardson, except the sum of $250, to Harry Hooper Walton. I appoint the said Benjamin Richardson executor of this, my will;" and that the said Emma Walton died June 23, 1881, before any partition of the estate, or any part thereof in said will mentioned.

That on August 26, 1878, John Richardson, Charles Richardson, Emma Walton, William Carman Richardson, Joseph H. White, and Elizabeth H. White, in writing, appointed the defendant their attorney in fact, "to collect, receive, and give acquittance for all rents and moneys due or to become due upon the real estate late of William Richardson, deceased, and to take all legal or other proceedings to collect the same; and let said real estate to such tenants and on such terms as the said attorney may deem expedient," and that the foregoing was the defendant's whole authority in the premises.

That the defendant has duly accounted to his constituents under said letter of attorney, and that the only dispute between him and them is a claim on the part of the plaintiffs that Eliza-

beth Richardson, the widow of Edward, is not entitled to a share of the rents, and that the defendant, as assignee of Augustus Boener, is not entitled to a share of said rents, or, if he is, that he is entitled for their benefit as well as for his own.

The answer further averred that the said Augustus W. Boener, on May 14, 1879, conveyed to the defendant his share in the estate for $500, in cash, and release of claims which he owed defendant's mother, which claims amounted to over $2,000, and which had been bequeathed by defendant's mother to him, and that soon afterwards the plaintiffs united with the defendant and with Elizabeth, widow of Edward Richardson, in a sale of a lot at Tacony, belonging to William Richardson's estate, the conveyance reciting the interest of the said Boener and its purchase by the defendant, and the plaintiffs and their counsel being acquainted with the same.

The answer further averred that, after said conveyance, defendant rendered accounts in which he was credited with the Boener interest, and Elizabeth Richardson with the share of Edward, and that the plaintiffs never claimed any benefit of the defendant's purchase of the Boener interest.

The answer further averred that in the fall of 1880 some of the plaintiffs began to claim a share in the benefit of the defendant's purchase of the Boener interest, and that subsequently they claimed that no property or estate passed to him by reason of the said purchase, and that neither the said Boener nor the said Elizabeth had any interest in the estate of which the testator died possessed.

On March 12, 1881, the defendant wrote to the plaintiffs' counsel asking them to elect whether they would or would not claim the benefit of the Boener purchase; whereupon, the plaintiffs, through their counsel, on March 18, 1881, declined to make any election, and thereafter filed this bill, without making any election, and averred a general account of past transactions, which are the subject of a settled account between the parties.

The answer further averred that the defendant, as assignee of Augustus W. Boener, is entitled to an undivided seventh of the estate, free from all trusts for the plaintiffs' benefit, and also that Elizabeth Richardson is entitled to an undivided seventh

of the estate. The answer then avers that the plaintiffs have no right to apply for relief to this court, and pleads to the bill, and to the whole relief therein prayed for: First, that Elizabeth Richardson is a necessary party to the bill; second, a settled account.

The cause was referred to George Tucker Bispham, Esq., as examiner and master, to find the facts and report a decree. He found the facts as set forth in the bill and answer, and reported, besides, as follows:

"There are two general questions which are to be passed upon in deciding the rights of the parties to this controversy: First, Was the interest of the children of the testator a vested one during the lifetime of the widow? and second, If that is so, was the purchase of the Boener interest by the defendant made under such circumstances that the plaintiffs are now entitled, after what has passed, to claim the benefit of it?

"The first question, while not, possibly, free from difficulty, may, nevertheless, be, perhaps, properly decided in the light of one or two general and well-settled principles, and of a few authorities in this state.

"We start with the general rule that bequests are to be treated as vested rather than contingent, if the language of the instrument is capable of admitting of such a construction. It is also a well-established rule that, where beneficiaries are mentioned by name, the doctrine of survivorship does not ordinarily apply, although it is true that the mere fact that the beneficiaries are named does not necessarily exclude that doctrine.

"It is further to be noted in the present case that the residuary clause of the will is distinguished by the absence of certain phrases, the construction of which by the courts has not always been uniform, but which might indicate a contingent gift. Thus, in the bequest to his children, William Richardson makes no use of any such expressions as "all my children who shall be then living," "all the children that shall then be living and the lawful issue of such as may then be deceased," and the like. These forms of expression have often been held to signify contingencies, and, perhaps, just as often the contrary. McBride

v. Smyth, 54 Pa. 245; Buzby's Appeal, 61 Pa. 111; Delbert's Appeal, 83 Pa. 462; *Re* Schweikert, 40 Phila. Leg. Int. 394; Lumberman's Nat. Bank's Appeal, 13 W. N. C. 191; Manderson v. Lukens, 23 Pa. 31, 62 Am. Dec. 312; Womrath v. McCormick, 51 Pa. 507; Crawford v. Ford, 7 W. N. C. 532; Laguerenne's Estate, 12 W. N. C. 110.

"Their absence, however, is worthy of note, as furnishing an argument in favor of the vested character of the interests.

"There is, in other words, in the will under consideration no language which on its face suggests a gift to persons who shall be alive at a specified time.

"The case is in substance, so far as the first words in the residuary clause are concerned, a present gift to children with the time of distribution postponed. That such postponement will not interfere with the present vesting of the gift must now be considered as thoroughly settled. Womrath v. McCormick, 51 Pa. 504; Manderson v. Lukens, 23 Pa. 31, 62 Am. Dec. 312; Crawford v. Ford, 7 W. N. C. 532; Laguerenne's Estate, 12 W. N. C. 110.

"The question then is: Do the subsequent words modify the intention thus gathered from the first part of the sentence?

"The fact that there is no gift to the children other than that found in the direction to the executors to distribute *in futuro* will not prevent the immediate vesting when, as in this case, the gift is postponed only to accommodate the estate by enabling it to meet the burden imposed by the gift to the first taker. 2 Wms. Exrs. 1344; McClure's Appeal, 72 Pa. 414.

"Nor, in my judgment, does the added gift to any deceased donee leaving issue vary this construction, that only defines the quantity of estate and refers to the succession of the interest. Womrath v. McCormick, 51 Pa. 504; Crawford v. Ford, 7 W. N. C. 532; Laguerenne's Estate, 12 W. N. C. 110; *Re* Schweikert, 40 Phila. Leg. Int. 394.

"I do not think, therefore, that either the postponement of the gift, or the fact that there is no gift to children other than that found in the direction to the executor to distribute *in futuro,* or the added gift to issue of any deceased donee leaving

issue, renders the estate contingent, under the authorities above referred to.

"But it is to be seen whether, from the entire language of the residuary bequest, there can be gathered an intention on the part of the testator to limit the ultimate beneficiaries to such of his children as should be alive at a certain time, or should answer a certain description; because, if no such intention can be gathered from the general scope of the residuary bequest, the will is to be construed as giving what the disposing words under the above authorities would seem to assert; namely, an absolute vested estate to the parties named in it.

"It was argued that the general intent of the testator was to benefit a class, the constituents of which were to be the survivors of certain named children, who shall be living at the death of the widow; but I do not think that the argument in this case, that the legacies are to be considered as given to the named children as a class, is a sound one.    I do not see anything to take this residuary gift out of the rule that children named take as individuals, and not as a class.    2 Jarman, Wills, p. 701, and cases there cited.

"The only other question remaining to be considered under this branch of the case is whether the dying without issue constitutes a condition subsequent or a devesting contingency.    It is to be noticed that whatever contingency existed in this respect is inferential, nothing of the kind being expressly stated in the will.    It would have been very easy (as was done in Peterson's Appeal, 88 Pa. 397) for the testator, if he had wished to do so, to indicate in his will that the death of any child without issue would have the effect of devesting the estate of the parent, by casting it upon the survivors.    In the absence of such express devesting contingency, one ought not to be inferred.    Gray v. Garman, 2 Hare, 268; Salisbury v. Petty, 3 Hare, 86, cited in 2 Wms. Exrs. 1359; Laguerenne's Estate, 12 W. N. C. 110.

"I am, therefore, of the opinion that the interest of Jane Boener was vested during the lifetime of the widow, and that the interest of Edward Richardson was likewise so vested.    In what way, exactly, the interest of Jane Boener passed to her surviving husband is not, perhaps, clear; but it seems to me that

this is a question which concerns only Jane Boener's personal representatives on the one hand, and the purchaser from her husband on the other. If they are satisfied (the one that the title has passed, and the other that it has been acquired), I do not see how the other children of the testator have anything to do with the matter. The interest of Edward passed, on his death, to his son; and, upon the death of his son, Elizabeth A. Richardson took the share under the intestate act.

"Second. The facts as to the purchase by Benjamin Richardson remain to be considered. They are as follows:

"The terms of the will were such that a legacy of $500 to the testator's reputed son William was made a lien upon the residuary real estate. For the purpose of discharging this lien and paying the legacy, it was proposed in the family that a lot of ground at Tacony, belonging to the estate, should be sold.

"Benjamin Richardson (who had, it seems, been advised or told that Jane Boener's interest under the will was vested in her during her lifetime, and had passed on her death to her husband) requested Mr. Boener to unite with the other devisees in a conveyance of the Tacony lot. Boener declined to do this; and thereupon Benjamin bought his interest in the whole estate for $500 in cash, and a release of an alleged claim which he (Benjamin), as an executor and sole legatee of his mother's estate, had against Boener, for moneys advanced by his mother for the support of Mrs. Boener, and for her funeral expenses. The amount thus alleged to have been advanced was $2,000.

"A deed for the Tacony lot was then prepared and was signed by all the devisees. It appears that in the deed there was a recital that Benjamin had become the assignee of the Boener interest.

"I find as a fact that, at the time of the execution of the deed for the Tacony lot, the plaintiffs knew that Benjamin had purchased and claimed to be the owner of the Boener interest. The deed itself recited the fact; and in the absence of fraud it is to be presumed that the parties to an instrument are acquainted with its contents.

"This presumption is strengthened by the fact that both William C. Richardson and Charles Richardson were informed

by Benjamin, at or about the time of the execution of the Tacony deed, that he had had some difficulty in getting Boener to unite in the sale, but had finally 'fixed the matter.' This certainly was sufficient to put them upon inquiry; and, from all that took place (as appears by the testimony), I find as a fact that both William C. and Charles had notice, either personally or by their attorney, that Benjamin was then the assignee of the Boener interest.

"There is no question that prior to the filing of the bill, namely, on March 12, 1881, the plaintiffs were fully advised, by a letter addressed to their counsel by the counsel for the defendant, of the fact of Benjamin's purchase, and were then asked to make their election whether they declined to have any share in the purchase, or whether they would claim the benefit of it; in which latter case they were asked to say that they would contribute their share of the purchase money, whatever that purchase money might be.

"The plaintiffs declined to make any election; and this declination was repeated before the master, and has continued to the present time.

"Under the facts as found in this report, I am of opinion, upon this branch of the case:

"First, that the relation to the plaintiffs which Benjamin Richardson occupied was not such that they were entitled to claim the benefit of his purchase of the Boener interest. It is true that he was attorney in fact of the plaintiffs to collect the rents; but he was also a co-owner with them, having acquired an interest under the will of his brother John. If Boener also had an interest, there seems to be no reason why Benjamin was not entitled to purchase it for himself, and without being obliged to account to the owners for the purchase. If one of several tenants in common purchases from another, under such circumstances, I do not think that there is any rule of equity which requires him to allow his cotenants the benefit of the purchase. The case is entirely different from the purchase by one co-owner of a claim or encumbrance against the whole estate. The purchase of an adverse claim might operate to the injury of all the tenants in common, and they all are, therefore, well entitled to

claim the benefit of it. But I do not see upon what ground one out of five or six tenants in common, who buys an interest of one of his cotenants, can be compelled to admit his remaining co-tenants to the benefit of the purchase.

"Second, that the plaintiffs, even if they ever were entitled to claim the benefit of the Boener purchase, were bound to elect so to do within a reasonable time after knowledge, and especially after notice and demand; and, having failed to do this in the present case, they cannot now be heard to insist upon being given the benefit of the purchase. If the Boener title was doubtful, but the plaintiffs desire to claim the benefit of it, they should have promptly offered to share the risk. Before the bill was filed they were fully informed of all the facts; and they ought not in fairness to throw the whole burden of the uncertainty as to the legal question upon Benjamin. If they affected to regard him as their agent in the purchase, they should have either promptly ratified it or promptly disavowed it.

"The view taken above renders it scarcely necessary to consider the question as to how much Benjamin paid for the Boener interest. If, however, the question should become material, then in my judgment the plaintiffs, if they are entitled to the benefit of Benjamin's purchase, must pay him their proportion of $2,500, at which sum the consideration of his purchase from Boener ought properly to be fixed. This amount was made up of $500 in cash, and a release of claims, as already stated, of $2,000. If the settlement between Boener and Benjamin Richardson was in good faith (and there is no evidence to show that it was not), the figures agreed upon by them should be taken as fixing the consideration which Benjamin paid.

"Upon the whole case, therefore, I report that the defendant has fully accounted to the plaintiffs, and that there is nothing in his hands due them, or any of them, in respect of their shares of rents collected by him.

"I report, consequently, that a decree should be entered dismissing the bill with costs."

The court below entered a decree accordingly; whereupon, the plaintiffs appealed and assigned as error the action of the court

in finding that, under the will of William Richardson, deceased, the interests of John Richardson, Elizabeth Berley White, formerly Richardson, and Joseph H. White, her husband, in right of the said Elizabeth, Emma Walton, deceased, formerly Richardson, William Carman Richardson, and Jane Richardson, and Augustus W. Boener, her husband, in right of said Jane, in the residuary estate of William Richardson, deceased, were vested during the lifetime of Jane Richardson, the widow of the testator.

Also the action of the court in entering a decree that the bill should be dismissed with costs.

*Walter Murphy, Robert H. Hinckley,* and *George Junkin,* for appellants.—Where there is no antecedent absolute gift of a future legacy, independent of a direction and time of payment, the legacy is contingent. Moore v. Smith, 9 Watts, 403; Leake v. Robinson, 2 Meriv. 363; Lumberman's Nat. Bank's Appeal, 13 W. N. C. 191.

The gift was to the testator's children, not as individuals, but as a class; and not to the class as it existed at the time of his death, but to the class restrictively defined by survival of the life tenancy.

The naming of some of a class of children, or others of a number of beneficiaries, does not by any means, of itself, render the gift any the less a gift to a class. Thus, in Porter v. Fox, 6 Sim. 485, the gift was to the testator's grandchildren and to his nephew T. O.

In Clark v. Phillips, 17 Jur. 886, to the children of A, the children of B, and to D.

In *Re* Stanhope, 27 Beav. 201, by name to four of the testator's five living daughters and their issue, with a subsequent provision that every daughter his wife might thereafter have should be admitted.

In Aspinall v. Duckworth, 35 Beav. 307, to a nephew, A, and the children of a lately deceased sister. All of these gifts were held to be gifts to a class.

Williams v. Neff, 52 Pa. 333, which seems to decide *contra,* is opposed to the weight of authority on this subject if that decision is rested solely upon the fact that the beneficiaries are all

named.    A gift to several children, or other persons, all of whom are named, may very often be construed to be a gift to those children or persons as individuals.    But such a decision cannot be rested on the sole ground that the beneficiaries are each named.    The reason is always found in other clauses or in the general scheme of the will.

In Hoppock v. Tucker, 59 N. Y. 202, the testator divided his estate into six parts, corresponding to the number of his children, giving substantially one part to each or to their children. One part (after deducting a specific legacy) he bequeathed "in equal proportions, share and share alike" to A, B, and C, children of his deceased daughter A. M.    It was held that, while the clause, taken alone, would be construed as a bequest to the persons named as individuals, yet, in order to effectuate the general scheme of the will (which in this case was that the issue of all his children, where they took under the will, should take by representation), it must be construed as a gift to a class.

So, also, a gift of a residue to A, B, and C, sons of testator's deceased brother, was held to be a gift to a class in Bolles v. Smith, 39 Conn. 217, upon the sole ground that a duty was placed upon them by the testator, which they must jointly perform, the duty, namely, of paying from the residue a pecuniary legacy to the testator's wife, and several other legacies (which payments in fact amounted to nothing more than the ascertainment of the residue itself.    See also Page v. Gilbert, 32 Hun, 301.    The law always favors that construction of a will which would prevent intestacy as to any part of the testator's property. Stehman v. Stehman, 1 Watts, 466; Axford's Estate, 2 W. N. C. 663; Boards of Missions' Appeal, 91 Pa. 507.

In applying this principle it is immaterial that no alleged intestacy did, as a matter of fact, happen to occur, for, as is said in Jarman on Wills, p. 469: "In construing wills we must look indifferently at actual and possible events."

Nothing in the construction of wills is better established than that a gift to an individual lapses by the death of that individual before that of the testator; while, if the gift be to a class, the share of a member of that class predeceasing the testator does not lapse, but inures to the surviving members.    Jarman, Wills, p. 623, and cases cited.

As the legacies here are of the residue itself, a lapse must necessarily occasion intestacy. If, therefore, the interests here given are to the children as *personæ designatæ*, and not as a class, then the testator has made just the kind of a will which the law, by virtue of the principles above stated, universally presumes a testator not to have intended to make.

The gift here was not only not to designated persons and to a class, but that that class was to be ascertained at the time of distribution, namely, the death of the life tenant.

The residuary estate is converted into personalty at the expiration of the life estate; and, therefore, the interests of all the remaindermen are interests in personalty.

"Issue" in a limitation of personal property take as purchasers, the reason of the rule being that the operation of law, whenever possible, "makes real estate descendible and personal estate distributable." *Re* Wynch, 17 Jur. 588; Myer's Appeal, 49 Pa. 111; Sheets' Estate, 52 Pa. 257; Snyder's Appeal, 95 Pa. 174; Clark's Estate, 14 W. N. C. 94.

Womrath v. McCormick is a case which, even as applied to gifts of real estate, was received with surprise on all hands, has been restricted as closely as possible, followed reluctantly in a few cases, and tacitly overruled in the Lumberman's Nat. Bank's Appeal, 13 W. N. C. 191, and Barger's Appeal, 100 Pa. 239.

It certainly could not be extended, beyond its own operation, to gifts of personal property, in flat disregard of the principle that "issue" in such gifts are purchasers.

*Crawford & Dallas,* for appellees.—The will works a conversion as to the realty by the direction to sell on the widow's death; and, if the clause would give a vested estate if the subject were realty, it would, of course, give a vested interest in the personalty. McClure's Appeal, 72 Pa. 421.

The well-established principles that the substance, and not the form, of the gift is the material consideration to determine whether it is vested or contingent; that, if there is a doubt upon the construction, the law vests the gift; that where futurity in a gift relates, not to the substance of the gift, but to the time of its payment, and there is an antecedent absolute gift of a life

estate and the gift in question is postponed for its benefit, to let it in, although there be no other gift than in the direction to pay or distribute *in futuro*,—the gift vested,—determined the supreme court in McClure's Appeal, 72 Pa. 415, to decide in a precisely similar case to the present, that a gift of realty to a wife for life and on her death "to be sold and equally divided amongst my nephews and nieces, namely:" and, naming them, gave them a vested legacy on the testator's decease.

This was affirmed in Chess's Appeal, 87 Pa. 364, 30 Am. Rep. 361, Mr. Justice SHARSWOOD there stating that Mr. Justice WILLIAMS's opinion in McClure's Appeal, was an elaborate and exhaustive opinion on the subject. This construction as to realty was assumed in Cote's Appeal, 79 Pa. 235.

Nor does the added gift to issue of any deceased donee leaving issue vary this construction. That only defines the quantity of estate, and refers to the succession of the interest. Womrath v. McCormick, 51 Pa. 504; Crawford v. Ford, 7 W. N. C. 532, and Laguerenne's Estate, 12 W. N. C. 110.

In each case the gifts in question were of a residue of both personalty and realty.

In the Lumberman's Nat. Bank's Appeal, the gift was to children then living and decided expressly upon the authority of McBride v. Smyth, 54 Pa. 248, and previous cases; which last case and Fairfax's Appeal, 13 W. N. C. 274, decide that it is only where the gift is to such child or children or individuals as shall attain a certain age, or sustain a certain character, or do a particular act, or be living at a certain time, without any distinct gift to the whole class preceding such restrictive description, so that the uncertain event forms part of the description of the person to take,—that a different construction obtains, following the established rule expressed in Smith's Executory Interests, p. 281.

In Barger's Appeal, 100 Pa. 239, the will, which was that of a very eminent lawyer, who knew the use of legal terms, expressly provided in legal phrase that the gift should not vest during the time in question after his death.

The term "class," applied to a gift involving survivorship and upon the question of vesting, "is applicable only to the case of a

plurality of persons comprised under one general description, indefinite in number, and individually undistinguished by name or particular description." Lord LANGDALE, in Burrell v. Baskerfield, 11 Beav. 525.

Therefore, if a testator, in a gift to children, or any plurality of persons comprised under one general description, names them (Bain v. Lescher, 11 Sim. 397; Burrell v. Baskerfield, 11 Beav. 525; *Re* Hull, 21 Beav. 314; Creswell v. Cheslyn, 2 Eden, 123; *Re* Gibson, 2 Johns. & H. 656; McClure's Appeal, 72 Pa. 421; Williams v. Neff, 52 Pa. 333), or only specifies their number, as, to the five children of A (Creswell v. Cheslyn, 2 Eden, 123; *Re* Smith, L. R. 9 Ch. Div. 117; *Re* Stansfield, L. R. 15 Ch. Div. 84), this is a *designatio personarum,* and not a gift to a class, and, of course, without survivorship.

Sir W. Page WOOD, V. C., said, in *Re* Gibson, that, with the exception of Knight v. Gould, 2 Myl. & K. 295, where the gift to three executors by name and office was held to be a gift to them as a class, passing to the two survivors, because given as a reward for performing their office, and the office being joint, their reward should be joint, he knew of no case of a gift to persons "hereinbefore" or "hereinafter" "named" or "mentioned" in which the gift was held to be to a class, involving survivorship.

And in this will the words of distribution "share and share alike" also strengthen the intent. A gift of aliquot shares to several as tenants in common is not to a class. Ramsay v. Shelmerdine, L. R. 1 Eq. 129.

The English cases of Porter v. Fox, 6 Sim. 485; Clark v. Phillips, 17 Jur. 886; and Aspinall v. Duckworth, 35 Beav. 307, cited by the appellants, are merely to the point that the addition of another person by name to a class gift does not destroy that class gift.

In *Re* Stanhope, 27 Beav. 201, the master of the rolls held that the gift to the named daughters was not to a class; but the added words that all his other daughters should take with them made it a gift to all his daughters simply, and, therefore, to a class, which is, of course, not the present case.

OPINION BY MR. JUSTICE TRUNKEY:

It is admitted that the sole question is: Was the interest of

the children of the testator a vested one during the life of the widow? The opinion of the learned master well expresses all that need be said upon this question.

Decree affirmed and appeal dismissed, at costs of appellants.